Marshall, C. J.
 

 This cause originated in the court of common pleas of Stark county, by the indictment of Edward E. Curtis „on a charge of accepting a bribe, while acting as director of public safety of the city of Canton. It is charged that on March 2, 1923, he accepted from one Clyde G-oldfuss, through an agent of Curtis, one Harry Bouklias, the stun of $50, with intent to influence defendant’s conduct with respect to his official duty, as follows, to wit: That Curtis would exercise his official influence to prevent the arrest of said G-oldfuss on account of the unlawful sale of intoxicating liquors, and that he would use his official influence to prevent interference by the police department with the said G-oldfuss, and that he
 
 *189
 
 •would not as such official direct any arrest of said Goldfuss on account of any unlawful sale of intoxicating liquors, but, on the contrary, that he would thereafter suffer said Goldfuss to unlawfully engage in the sale of intoxicating liquors within said city and county.
 

 The offense charged was a violation of Section 12823, General Code, the pertinent portions of which are as follows:
 

 “Whoever, being * * * a state or other officer, public trustee, agent or employe, of the state * * * accepts any valuable or beneficial thing to influence him with respect to his official duty * * * in a matter pending, or that might legally come before him, shall be imprisoned in the penitentiary not less than one year nor more than ten years.”
 

 In the courts below, motions to quash and demurrers were filed, which were overruled, and, although these orders of the trial court are assigned as error, and were argued in the Court of Appeals, they are not seriously argued in this court, and will therefore receive no further notice. The case was bitterly contested in all courts, and a voluminous record of more than 1,200 pages is presented in a proper bill of exceptions. It will not be possible to notice all of the assignments of error, but we will notice all those which have been seriously urged in this court.
 

 The first assignment of error we shall consider is that relating to the claim of variance between the indictment and the proof. Upon this point it is contended that the evidence does not support the indictment, because the indictment charged that
 
 *190
 
 the money was paid by BouHias to Curtis on March 2, and on that day Gfoldfuss was arrested by the state authorities, his place of business closed and destroyed, and no violations are shown oni the part of 'G-oldfuss from and after that date; that therefore he could not have received immunity from arrest and prosecution on the part of the accused. It is fairly certain from this record that, after interference by the state authorities and wholesale arrests, beginning on March 2, 1923, conditions were improved in the city qí Canton for a while, and no one contends that from and after that date any further money was collected by BouHias from law violators in that city, or that any such moneys were paid to Curtis to influence his official conduct. It does not follow from the foregoing that no offense was proven, or that there was any variance between the indictment and the evidence introduced by the state. The claims of counsel for the accused arise out of a misconception of the law of this case. If the crime is incomplete without actual protection having been given to Goldfuss and others, from whom BouHias was collecting money to be paid to Curtis, and if bribery can only be shown by the receipt of money, plus a showing of law violations and active participation and interference on the part of the officer to prevent detection and conviction, then it must be admitted that there has been a variance in this case. If, on the other hand, the crime is complete upon payment of the money by Bouklias, and its receipt by Curtis, with the agreement that thereafter Curtis as such public official would use his official influence to prevent
 
 *191
 
 interference by the police department, and refuse to direct the arrest of Goldfuss, and suffer Gold-fuss to unlawfully engage in the sale of intoxicating liquors, in such event no variance has been shown. Counsel for the accused cite the case of
 
 State of Ohio
 
 v.
 
 Davis,
 
 90 Ohio St., 100, 106 N. E., 770, the first syllabus of which reads:
 

 “"Where an indictment charges the solicitation of a bribe, it is necessary for the state to plead and prove the specific corrupt intent required by the statute, to wit, ‘to influence him with respect to his official duty, action, vote,’ etc.”
 

 It is true that the statute necessarily contemplates that the influence upon official conduct must be subsequent to the time the bribe is paid and received, and it is true that the indictment- in this case charges that the money was paid for the purpose of influencing official conduct thereafter, but it is apparent that even the authority cited by counsel for the accused does not bear out their contentions. It is only necessary that there be some specific corrupt intent, not that there be actual proof of the subsequent commission of crimes by those who are purchasing protection and an active exercise of official conduct in their behalf to prevent detection and conviction. It is well settled by the authorities that the offense is complete upon the payment of the money, if the object, of its offering and payment is to influence the official in performance of his duties, and it is immaterial that he fails to carry out his part of the compact or that he has had no opportunity to do so. Under-hill on Criminal Evidence (3d Ed.), Section 660; 9 Corpus Juris, 406. ‘Variance is defined by the
 
 *192
 
 General Code in Section 13582, and it is therein provided that a variance shall not be ground for am acquittal unless the court before which the trial is had finds that such variance is material to the merits of the case, or may be prejudicial to the defendant. If no other evidence had been introduced by the state bearing upon the official misconduct of Curtis, and if the testimony in this case had been confined to the mere payment and receipt of the money and the testimony of Bouklias as to the purpose of its payment, the fact that Goldfuss was arrested on the same day would have been insufficient grounds for declaring as matter of law that there was a variance and complete failure of proof. There can be no variance in any event which could operate to the prejudice of the accused, unless he could again be put in jeopardy for receiving the $50 on March 2, 1923, from Gold-fuss, on account of immunity from prosecutions under the liquor laws. The lower courts did not therefore err on this point.
 

 The next assignment of error we shall notice is that relating to the evidence offered by the state tending to show the commission of similar offenses. It is contended, in the first place, that the evidence adduced by the state did not in each instance show the commission of separate and distinct previous offenses by that character and weight of evidence which would prove the commission of such separate crimes beyond a reasonable doubt. This proposition is easily disposed of. It was held, in
 
 Baxter
 
 v.
 
 State,
 
 91 Ohio St., 167, 110 N. E., 456, in the second paragraph of the syllabus, that the burden does rest upon the state to prove the guilt of such
 
 *193
 
 other offenses by the same degree of proof as required in all criminal oases. This harsh rule was distinctly overruled by this court in
 
 Scott
 
 v.
 
 State,
 
 107 Ohio St., 475, 141 N. E., 10, and since the pronouncements of this court in that case, as declared in the sixth paragraph of the syllabus, it is only necessary that there be evidence tending to prove each essential element of other similar crimes. In the instant case the record furnishes evidence tending to show a large number of other complete offenses, ten or twelve in number, and as to all of those separate and' distinct similar offenses the question has been settled so far as this court is concerned in the case of
 
 Scott
 
 v.
 
 State, supra.
 

 This brings us to the third assignment of error necessary to be discussed. The plaintiff in error urges strongly that the court of common pleas erred in the admission of certain evidence offered on behalf of the state, and his urgent contention in that regard is that testimony was introduced with relation to transactions with a certain Max Miller, a certain Val Cook, and a certain Jacob Glaser, which is claimed to be palpably erroneous and prejudicial.
 

 The facts in the Max Miller transaction are as follows: Max Miller had certain liquor, which was stored by him in the home of a man named Dryer, who lived in the residential section of Canton. Miller was arrested for having intoxicating liquor in his possession. When Miller was apprehended by the police, the evidence showed that the defendant Curtis expostulated with the police officers for arresting Miller, saying, “He is a friend of mine,” and, also, “Why don’t you leave the rich
 
 *194
 
 alone and confine your efforts to the poor?” There is no evidence in the record to the effect that the defendant knew Miller before his arrest, or conversed with him concerning his engaging in any illicit liquor traffic. After the arrest, Miller was convicted for the crime charged.
 

 As to Yal Cook, the evidence submitted is as follows: Cook was a gambler in Canton, who was arrested for gambling, entered a plea of guilty, and was fined. The evidence connecting Curtis with the transaction is that, upon the arrest of Cook being called to his attention, Curtis expostulated with the officers for the arrest, stating that if these men were arrested and punished his brother could not be re-elected mayor for a second term.
 

 The facts in the Jacob Glaser case, as disclosed by the record, were: That Glaser was operating a gambling place, which was raided by four of the police officers of Canton about midnight, Thanksgiving evening, 19'22. Glaser insisted npon being taken to the ■ apartments of the accused, and was so taken by the officers at the hour of midnight, and, upon being aroused from his bed, Curtis carried on a conversation with Glaser in a low tone of voice, which was not heard by Officer Streitberger who had him in charge, but at the close of the conversation the officer was instructed to dismiss Glaser from custody. It was further shown that, although four officers had arrested Glaser at his place of business, while in the very act of conducting a gambling institution, the officer ordered the gambling equipment and money which had been seized to be released; and Glaser was not arrested or prosecuted.
 

 
 *195
 
 Another transaction was one in which several persons were arrested for gambling at a private residence and were allowed by the defendant to be released upon their own recognizance. These persons later entered pleas of guilty and were fined.
 

 All of this evidence was admitted by the trial court. ■ The plaintiff in error claims that this evidence was clearly inadmissible for the reason that it does not tend to show that any money or other valuable thing was received by Curtis as an inducement to influence his official conduct, and that therefore an essential element of the crime of receiving a bribe was lacking, and that it does not amount to' the establishment of a similar offense to that charged against him in the indictment.
 

 This evidence was not admissible upon the ground that it established previous offenses of a similar character. It will be observed that in the
 
 Scott case,
 
 in every transaction which was permitted to be introduced in evidence upon the theory that' it constituted a similar offense, there, was some evidence tending to show that a consideration passed to the defendant, charged with the crime of bribery, either immediately before or very shortly after the giving of the favor or protection established by the evidence.
 

 In this case, while the Val Cook transaction, the Max Miller transaction, and the other gambling transaction are evidence of unfitness in office, they are not in any sense evidence that the crime of accepting the bribe had been committed in this particular situation by Curtis. And if there were no other ground for the admissibility of this testimony, we should have to reverse this case.
 

 
 *196
 
 These portions of the testimony, and perhaps others of a somewhat similar nature, relating to similar offenses, in which all of the essential elements of a crime were not proven, do not depend for their competency strictly upon the principles which have heretofore been declared by this court relating to the admissibility of other similar offenses for the purpose of proving guilty knowledge and criminal intent. It should be stated at this point that the trial court carefully instructed the jury that all evidence touching similar offenses was not admitted as, or to be considered by the jury as, direct evidence of the crime charged in the indictment, but, on the contrary, was for the sole purpose of enabling the jury to determine the intent of the defendant at the time of the alleged acceptance of the bribe, and whether the money was received by Curtis for the purpose of influencing his official conduct. In determining the competency of this testimony, and other testimony which will hereafter be discussed, it is necessary to refer to this voluminous record and the wide range of the testimony offered on the part of both the state and the defendant. This court does not weigh the testimony, and the court of common pleas and Court of Appeals, possessing the power and owing the duty to weigh the testimony, having sustained the judgment of conviction, this court will assume that each and every witness who testified in the case is worthy of belief.
 

 This record indicates a condition of non-enforcement of liquor and gambling laws and a disregard of official duties in the city of Canton, Ohio, for a period of approximately two years, which is
 
 *197
 
 without a parallel in cities of the size of Canton or smaller in the state of Ohio. It indicates that Curtis was selected for appointment as safety-director in the resort of one Jumbo Crowley shortly after the election of his brother, O. 0. Curtis, as mayor of the city; that one Harry Turner took an active part in bringing about his appointment as safety director, and that for a period Turner acted as defendant’s agent and accomplice in the collection of graft from gambling places, and Turner, himself testified to these facts, to the collection of the money from the proprietors of the gambling places, and of the payment of the same to Curtis, and further testifies that during the time such payments were made protection was in fact given to such places. One of the gambling places which was being operated, and which was not disturbed, was owned in part by Edward E. Curtis, and the testimony details the apportionment of the profits of that place, which profits amounted to approximately $9,000, of which one-fourth was received by Curtis. One-fourth of the profits of another place was paid to Curtis, and still another place contributed to Curtis the sum of $100 per week. A fourth place paid him the sum of $50 per week. Boxing contests were held at the city auditorium. Arrangements for the use of the auditorium were made through Turner, and one-half of the profits was paid to Curtis and Turner, of which Curtis received two-thirds. These profits amounted to more than $1,000. In June, 1922, Turner began to collect money from operators of drinking establishments where intoxicating liquors were sold in violation
 
 *198
 
 of law. Goldfuss paid for protection at the rate of $250 per month. In the fall of 1922 Turner and Curtis quarreled, and thereafter Harry Bouklias acted as agent for Curtis, and regular collections were thereafter made by Bouklias from law violators, amounting to large sums of money, which were paid over to Curtis. The record further shows that Curtis and Bouklias became engaged in the unlawful manufacture of intoxicating liquors, with an arrangement for equal division of the profits, and the product of the stills thus operated was sold to 23 people who were paying money to Curtis through Bouklias for protection from arrest and prosecution. The still had a capacity of several hundred gallons of liquor per day, and was for a period operated at the Canton Cold Storage building. Many places were raided from time to time, after warning given, with the usual fruitless results. Bouklias was even permitted to name the vice squads appointed by the chief of police. The vice squad which had theretofore been operating was ordered removed by Curtis, and another squad was appointed upon the dictation of Bouklias. One member of this squad was a former bartender, who was later removed because he lacked the proverbial “honor among thieves.” The testimony shows that money was also paid to members of the vice squad. Some of the regular police officers of the city of Canton made arrests from time to time and were severely censured for so doing by the safety director. All these matters were testified to by Turner, by Bouklias, and by a large number of proprietors of places, who were paying money and receiving protection therefor.
 

 
 *199
 
 It was the theory of the state in this ease that there was a reign of lawlessness and a general conspiracy between the safety director and the underworld, which continued until March, 1923, when the state prohibition department sent officers into Canton, who made a number of arrests, thereby preventing the further performance of the agreement between Curtis, Bouklias, and other violators, including Goldfuss. The raids made by the state officers resulted in the arrest of persons at 23 places, their subsequent conviction, and in the ultimate development of all the facts herein narrated. It is apparent therefore that this record goes far beyond the ordinary showing of other similar isolated offenses which are by all the authorities proper to - be shown. This record presents a case of a general conspiracy of enormous proportions showing criminal conditions in the underworld of the city of Canton, and a moral obliquity on the part of its safety director which finds no counterpart in the annals of the criminal jurisprudence of Ohio.
 

 The defense in this case was apparently conducted upon the theory that guilty knowledge and criminal intent could only be shown by proof of other completed, fully consummated crimes of a similar nature, all of which must be proved beyond a reasonable doubt. The proof of other similar fully consummated offenses is only one of the means of proving such knowledge and intent. The numerous conversations narrated between Curtis and Bouklias, Turner, Streitenberger, Cook, Miller, and many others, all show conclusively, if believed,
 
 *200
 
 that the guilty transaction alleged in the indictment was only one of hundreds of transactions resulting in the payment of tens of thousands of dollars to Curtis for the purpose of influencing his official conduct. While it is conceded that, where only isolated similar cases are shown, it is necessary that every element of such similar crimes must be proven, or at least evidence be adduced tending to prove every essential element, a more liberal rule must prevail in the ease of a conspiracy of enormous proportions, every part and parcel of which fits into the general scheme, and all of which is proven by testimony which, if believed, is conclusive and overwhelming. Counsel for the accused are most insistent in their objections to the testimony pertaining to ‘Val C'ook and Max Miller. The testimony on this point must beheld to be competent upon the theory that it related to direct admissions by Curtis going directly to prove guilty knowledge and criminal intent. There is no branch of criminal law better settled than that admissions against interest are competent, even for the purpose of proving the crime itself. In this instance they were only offered for the purpose of proving intent, and were clearly limited to that purpose by the trial judge at the time the testimony was introduced. The testimony pertaining to Jacob Glaser is even more conclusive, because Bouklias testified that Curtis had told him to stay away from Glaser’s places because he was making direct payments to Curtis. The testimony of the many witnesses in this case so closely relates to a single well-formed plan, and all the testimony so perfectly dovetails, and these three transactions
 
 *201
 
 which are specially excepted to are so inseparably interwoven with the entire scheme, that the state was clearly entitled to this testimony for the purposes to which the same was limited by the trial judge.
 

 It is not contended that it was not competent to produce evidence tending to show a conspiracy, and, even though a conspiracy is not pleaded in the indictment, it is well settled by the authorities that evidence of a general scheme of conspiracy and confederation to commit crimes is admissible on the part of the state for the purpose of proving scienter, motive, intent, and the like, where a single offense only is charged in the indictment. If it was competent to prove a conspiracy at all, it follows that any evidence tending to establish such a conspiracy is also competent. This subject has received consideration and elaborate discussion at the hands of this court in
 
 Patterson
 
 v.
 
 State,
 
 96 Ohio St., 90, 117 N. E., 169, L. R. A., 1918A, 583. We quote from the second paragraph of the syllabus:
 

 “Upon the trial of the accused upon an indictment for the larceny of W.’s automobile, where the state relies for conviction upon proof of such criminal plan to steal various automobiles, belonging to W., C., and others, and offers evidence of such criminal plan and the larcenies of cars other than charged in the indictment, the fact that the accused at a former trial had been acquitted of the larceny of C. ’s car does not conclude the state from proving that such plan embraced the larceny of O. ’s car, although the evidence offered at such second trial was substantially the same as that produced by
 
 *202
 
 the state on the former trial Avhich resulted in' a verdict of acquittal.”
 

 Much in the opinion of Jones, J., in that case, is pertinent to the instant case and supports the principles herein declared.
 

 Upon this branch of the case the trial court proceeded with commendable decorum, and required the criminal conspiracy to be first shoAvn by competent eAÚdence, and then, in accordance Avith well-settled and generally accepted principles, permitted the introduction of a wide range of evidence. Though not required to weigh the evidence, we do not hesitate to say that the evidence adduced establishes a clear case of conspiracy betAveen Curtis, Bouklias, Crowley, Turner, and others, to thwart and annul the administration of criminal justice in the city of Canton, in respect to the liquor and gambling laws of the state. Under the well-settled rules pertaining to criminal conspiracies, each of the parties to such conspiracy becomes, under the law relating to accomplices, responsible for all of the declarations and acts of the others which are spoken or performed in the execution of the common purpose, and all such acts and statements are admissible as a part of the proof of the general plan. All such acts and declarations are of course admissible only upon the question of scienter and criminal intent, and, being strictly limited by the court at the time of the admission of such evidence, and again in the charge, to a consideration by the jury only for such purpose, we find no evidence of similar offenses, either partly or wholly consummated, as disclosed by this
 
 *203
 
 record, which was inadmissible, and the lower courts therefore have not erred upon this point.
 

 The assignment of error which we shall next consider relates to the admission of evidence on the part of the state, consisting of a letter written by Hon. Harvey F. Ake, judge of the juvenile division of the common pleas court of Stark county, directed to Curtis, under date of October 30, 1922. This letter calls attention to a city ordinance of Canton, making it unlawful to permit persons under 18 years of age to attend public dances, and further stating that the managers and proprietors of dance halls were generally violating the ordinance, and the letter ends with a paragraph as follows:
 

 “Some time ago, if the newspapers reported you correctly, you said that you were going to prosecute all offenders, but we have not yet heard of any prosecutions. They may have escaped our attention. Eeally, Mr. Mayor, your city is wide open in so many ways that it sometimes seems to me that we have only a semblance of an executive government. ’ ’
 

 The admission of this letter is claimed to be prejudicial error. It is more particularly complained of because Judge Ake had ceased to be common pleas judge, and had become one of counsel for the accused, and was participating in the trial and seated at the counsel table at the time the letter was introduced. It must be admitted that if this letter had been introduced as a part of the evidence offered by the state in chief, for the purpose of establishing the truth of the particular crime charged in the indictment, it
 
 *204
 
 would have been prejudicial error. It therefore becomes necessary to state in some detail the circumstances which led up to the admission of this letter. It has already been shown that the testimony of the state assumed a wide range by reason of the effort to prove a general conspiracy. The evidence of the defense was permitted to assume an equally wide range, because it was stated by counsel for the defense, in the opening- statement to the jury before the introduction of evidence, that the prosecution of this case was in fact a persecution and the result of a conspiracy on the part of the underworld. It was claimed by the defense that Curtis had been a faithful official, and had strictly enforced the laws, and had prosecuted violators of the liquor and gambling laws with such vigor that he had aroused their animosity, and that, in a spirit of vengeance, they had falsely framed the conspiracy shown by the state. It was as a part of the attempt to prove such conspiracy on the part of the underworld of the city of Canton that the defense offered as a witness the brother of the defendant, Ex-Mayor C. 0. Curtis, whose testimony tended to support the claims of strict enforcement and disclaimed any knowledge of general violation within the city of Canton of the laws of the state or the ordinances of the' city. He admitted that he had made a pledge to eliminate graft and inefficiency from the police department, denied that he had accepted any money from protected violators of the laws, and introduced letters addressed to the chief of police of the city tending to prove strict enforcement of the laws. It was a part of the cross-examination of this witness by
 
 *205
 
 the prosecuting attorney concerning criminal conditions in 1922 and 1923 which brought out the fact of his having received the letter from Judge Ake. As a part of the same cross-examination, it was developed that a letter was also received of much the same tenor from Walter S. Ruff, who was at the time the letter was written the prosecuting attorney of Stark counity. Those letters were admittedly written by public officials of Stark county, who were charged by the duties of their respective offices, and also by their respective oaths of office, with law enforcement in that county.
 

 We have carefully examined the record on this point in order to breathe the atmosphere of the trial and especially of this extraordinary defense. The letters of Judge Ake and Prosecutor Ruff could not have been detrimental to the defendant, unless they tended to break down the claim of strict enforcement of the laws on the part of the safety director. The letters were certainly of the same character, though of a contrary tenor, as the testimony which had been offered by the defense, of which the testimony of Ex-Mayor Curtis was a part. If it was competent to prove strict enforcement of the laws as a defense to a charge of a particular crime, then by. all the rules of evidence it was competent to rebut that evidence. Ex-Mayor Curtis was not the defendant in the case, but he was utilized by the defendant as the person who was best qualified to know, and who was charged with the duty of knowing, the actual conditions of enforcement in the city of Canton during the period covered by the letters. It was equally his duty as mayor to call complaints of
 
 *206
 
 general violations of law to the attention of the safety director. The defendant could not use the ex-mayor only so far as such use would be beneficial to him, and deny to the state the right to make further use of the same witness on cross-examination on matters pertaining to the same subject concerning which he was examined in chief. If the knowledge of the mayor was available to the defense, then his knowledge was equally available to the state upon the same matters, though such further knowledge may have been damaging to the defense instead of beneficial. The fact that Judge Ake was one of the attorneys representing the defendant, and sitting at the counsel table at the time of the introduction of his letter, does not render this testimony either erroneous or prejudicial. Judge Ake, during his period of service as judge of the juvenile division of the court of common pleas of Stark county, acquired a reputation for law enforcement. It was a distinct advantage to the defendant to have the benefit of his services. If it proved to be a disadvantage at the moment of the introduction of this letter, the situation was one for which the defense alone was responsible. The trial court might well have refused to permit the introduction of any evidence along the lines of this extraordinary defense, and yet under the authorities it was not error to admit it in the exercise of a sound discretion. Having permitted the defense to go into that inquiry, and having permitted the inquiry to take a wide range, and the door having been opened widely, it cannot be said to be prejudicial error that the prosecutor entered the door thus opened, with telling effect.
 
 *207
 
 It is significant that the record does not disclose any protest on the part of Judge Ake, or that he even addressed the court on this matter.
 

 The next assignment of error to be considered relates to the testimony of Eev. Longsworth, who testified briefly that he had preached a series of sermons on the subject, “Canton, a City of Vice,” and that this series of sermons covered a period of two or three months, beginning July '23, 1922. These sermons severely criticized the Curtis administration, and it is contended that this testimony was erroneously admitted and prejudicial. In considering this feature of the case, we must continue to keep in mind that one of the defenses was that of conspiracy on the part of the underworld, and that the testimony of Longsworth followed the testimony of Bouklias. During the course of the cross-examination of Bouklias, defendant’s counsel developed the fact that it was planned to murder the minister because of his activity in exposing vice conditions in the city of Canton. If the testimony of Bouklias is to be believed, and it must be believed by this court for the purposes of this review, the plan to murder the minister was a part of the general scheme or conspiracy to thwart and annul the administration of justice in the city of Canton, and that particular feature of the conspiracy having been developed by counsel for the accused, or at least the way having been opened by the cross-examination of Bouklias, we are unable to see that the mere additional fact that there was a motive for the murder of the minister becomes a prejudicial factor in this case. Every act of Bouklias which was a part of the conspiracy
 
 *208
 
 shown by the state becomes the act of Curtis. Bouklias testified that the proposed murder of the minister was the thought and suggestion of Curtis, and although murder is not a crime similar to bribery, the testimony was nevertheless admissible and competent, on the theory that it was a part of the plan. The state is not driven to the extremity of showing the admissibility of the testimony of the proposed murder. That testimony was brought out by the defense. The state only added thereto the evidence of the motive. We are inclined to think that the evidence of Rev. Longsworth was a very minor factor in the case, and that the real damaging feature was the testimony of Bouklias, which was developed by defendant’s counsel. We therefore find no error concerning this feature.
 

 It is claimed that the court erred in the charge to the jury in the use of the following language:
 

 “ (3) That at the time he, said Edward E. Curtis, accepted this valuable thing, that is, the $50, it was accepted with intent to influence him, the said Edward E. Curtis, in his official action and duty as such director of public safety.”
 

 It is claimed that above instruction violates the rule declared in
 
 State
 
 v.
 
 Davis,
 
 90 Ohio St., 100, 106 N. E., 770, in that it fails to require the jury to find that it was accepted by the officer for the specific purpose set forth in the indictment, and not to influence him generally. If this instruction stood alone, it would be subject to criticism. This particular instruction was one of five instructions which were separately stated and numbered, making up the essential elements necessary to be found in proving the crime charged. The other enumerated
 
 *209
 
 elements fully supply the deficiency.' The fourth enumeration was:
 

 “That it was accepted by the defendant -as such officer, to influence him with respect to his official duty in some of the respects stated in the indictment.”
 

 This assignment of error must therefore be overruled.
 

 The next assignment of error relates to the refusal of the trial court to charge certain requests. We will only discuss those which are discussed in the briefs of counsel. Request No. 7 was as follows:
 

 “I will say to you as a matter of law that, according
 
 io
 
 his own testimony, Harry Bouklias was an .accomplice of the defendant in the alleged commission of the offense charged in the indictment; and, this being true, you should scrutinize his evidence, with care, and you should not convict the defendant on his evidence if you find it stands alone and is not corroborated by other evidence in this case.”
 

 Request No. 8 was in all respects similar to No. 7, except that it included Turner, G-oldfuss, Haas, Saunier, Loehary, 'Chinas, and Eeonomopolous. There are two reasons why these requests were properly excluded. Whether or not these witnesses were accomplices was a question to be submitted to the jury, and that question was properly submitted to the jury as a part of the general charge under a proper definition of the word “accomplice.” The jury was also to be the judge of the belief to be attached to their testimony. To single out one witness, or a number of witnesses,
 
 *210
 
 for either the prosecution or the defense, and to discuss their credibility, would be manifestly invading the province of the jury. "We are further of the opinion that if the state had made this request, and it had been granted, or if the court had given this charge without a request on the part of the defendant, it would have been error. Manifestly those parties could not be assumed to be accomplices of the defendant without assuming the guilt of the defendant. There could be no accomplices unless there was a conspiracy, and there could be no conspiracy unless there was a plan in which the defendant had participated.
 

 As to the necessity for corroboration, the court charged the following:
 

 “It is highly important that the jury should require this testimony of every witness who is an accomplice to be corroborated by other evidence of facts, and circumstances in the case. The evidence of an accomplice should be very cautiously received, and carefully considered and examined by you as jurors, together with, and in the light of all the evidence in the case, and, when the evidence of an accomplice is found by you to be worthy of belief on your part, you may then believe it, and give just such weight to that evidence as you find it to be entitled at your hands.”
 

 These requests were therefore properly denied.
 

 Bequests Nos. 3 and
 
 é
 
 related to the evidence of Boukliaa and Turner, and sought to require the jury to take into consideration the fact that they had admitted giving perjured testimony before the grand jury, and that they had testified before the grand jury that they had never paid any
 
 *211
 
 money to Curtis. These requests were proper, but the refusal of the oourt to give them literally was not error, because the court did charge generally in the general charge, without naming any witnesses in] particular, that the jury should consider “whether or not any witness has been contradicted, or if he has heretofore sworn otherwise and committed perjury, or if he has made other contra diotory statements to the evidence which he gave upon the witness stand.”
 

 Request No. 5 related to the testimony of a number of the co-conspirators, and asked that the jury be required to take into consideration the fact •that they had admitted under oath that they were law violators and parties to a conspiracy involving the attempted corruption of a public official. This matter was also substantially covered in general terms in the general charge, and its refusal was therefore not error.
 

 Requests Nos. 1 and 2 singled out the testimony of the witness Bouklias, and requested the court to charge that, if the jury should believe under all the evidence in the case that it was just as probable that Curtis testified truthfully as that Bouklias testified truthfully concerning the payment of the money, the defendant should be found not guilty. The general charge was even stronger than this, because it required the jury to find that every element of the offense had been proven beyond a reasonable doubt, and this would of course include the testimony of Bouklias, because he was the only witness who testified directly to the payment. These requests were therefore properly denied.
 

 
 *212
 
 Request No. 6 was as follows:
 

 “I
 
 will say to you as a matter of law that, if you believe that the witness Harry BouMias purposely and deliberately testified falsely as to any material matter in this case, you will be justified if you so decide in rejecting his testimony as to each and all of the matters concerning- which he has testified.”
 

 This was refused, and the court charged the jury:
 

 “You may, if your judgment dictates, believe part and disbelieve part of- any witness’ testimony, or believe it all or disbelieve it all as you determine. ’ ’
 

 "We think the instruction as given was the correct one.
 

 All of the foregoing requests were presented to the court in writing before argument, but, under the well-known principles declared in
 
 Wertenberger
 
 v.
 
 State,
 
 99 Ohio St., 353, 124 N. E., 243, they were not required to be given at that time, though it was the duty of the court to incorporate the substance of those requests, if sound, in the general charge. That the substance only was necessary to be charged has been decided in
 
 Rheinheimer v. Aetna Life Ins. Co.,
 
 77 Ohio St., 360, 83 N. E., 491, 15 L. R. A., (N. S.), 245. We therefore overrule this assignment of error.
 

 It only remains to be considered whether there was misconduct of counsel. The principal complaint of misconduct relates to the statement of the prosecutor in the closing argument, to the effect that Bouklias had been indicted for perjury and would have to pay the penalty for it, but that “I
 
 *213
 
 will not lift my little finger to ever send Turner or Bouklias to the penitentiary unless Edward Ourtis goes with them.”
 

 It was claimed by the defense that this was a threat on the part of the prosecutor, designed to force the jury to convict Curtis in order to insure the prosecution of Bouklias and Turner. The court immediately withdrew that statement of the prosecutor from the jury’s consideration, and thereby corrected the error so far as it was within the power of the court so to do. This statement of the prosecutor must be considered in connection with the following statement, made by counsel for the defense in the argument to the jury:
 

 “Now, ladies and gentlemen of the jury, all of these men except Bouklias and Turner, who are indicted for perjury, are free to-day, all these alleged bribe givers are free, the prosecutor says he will get after them, and I hope he will, but, at the present time, he, the goat, is the only man indicted and tried for bribery, and all the confessed bribe givers, Bouklias, Turner, Economopolous, and Crowley, and all the rest of them are at liberty, walking around the streets.”
 

 It must be admitted that this statement of counsel for the defense was a strong provocation, and brings the case within the principles declared by this court in
 
 State
 
 v.
 
 Auerbach,
 
 108 Ohio St., 96, 140 N. E., 507. This incident was not reversible error.
 

 Having read all the briefs of counsel, having examined all pertinent authorities cited, having carefully read the opinions of the court of common pleas and Court of Appeals, having read all por
 
 *214
 
 tions of the record to which attention has been called by briefs and opinions of the lower courts, having read all the testimony of the defense, and having read all the testimony of every so-called conspirator, we are convinced that there was a conspiracy to thwart and annul the administration of justice in the city of C'anton, during the administration of the defendant as safety director of that city, and we are unconvinced that any conspiracy was framed on the part of the underworld for the purpose of persecuting the defendant in this case. It is true that the principal witnesses who testified against the defendant in this case had previously testified to the contrary, and, as suggested by counsel for the defendant, it is necessary to determine whether they spoke the truth on the one or the other occasion. Those witnesses having been guilty of violation of the liquor and gambling laws, and having been guilty of bribery, not to say many other crimes, and having crowned their unholy work by committing perjury in an endeavor to save themselves from the penalties for their crimes, there was every reason why they should have adhered to that perjured story, because they certainly have not made their situation better by telling a contrary story, and it seems quite certain from this record that, except for their repentance and confession, the state never could have made a case against any of these parties except that of violation of the liquor and gambling laws. It is easy to organize a conspiracy for any purpose, but the instances are rare where a conspiracy on the part of a large number of people can succeed to the point where it does not ultimate
 
 *215
 
 ly meet disclosure and punishment. This is what has happened to the real conspiracy in this case, which we believe was the only conspiracy. It is impossible to read this record in its entirety without feeling that the testimony of these conspirators has the ring of truth and that the defendant is guilty as charged in the indictment.
 

 We find no prejudicial error in this record, and the judgment of the lower courts must be affirmed.
 

 Judgment affirmed.
 

 Day, Allen and Kinkade, JJ., concur.