FLEMING *v.* THE STATE OF OHIO.

(Decided July 1, 1929.)

*Mr. George W. Spooner* and *Mr. Selmo Glenn,* for plaintiff in error.

*Mr. Ray T. Miller,* prosecuting attorney, and *Mr. P. L. A. Lieghley,* for defendant in error.

RICHARDS, J. Thomas W. Fleming was a member of the city council of the city of Cleveland and was prosecuted under Section 12823, General Code, for soliciting and accepting a bribe on or about September 27, 1927. The indictment contained two counts, the first of which charged him with unlawfully soliciting from one Walter Oehme $200 with intent to influence said Fleming in respect to his action with relation to a certain ordinance that might legally come before him in the city council. The second count charged him with unlawfully receiving and accepting from said Walter Oehme money in the amount of $200, to influence him, said Fleming, with respect to his official duty regarding a certain ordinance in the city council which might come before him as a member thereof. The trial resulted in a verdict of not guilty as to the first count of the indictment, and guilty on the second count, and thereafter the defendant was duly sentenced.

It is urged as grounds for reversal that the verdict and judgment are not supported by sufficient evidence, and that the trial court erred in the admission and rejection of evidence and in the charge and refusal to charge.

The bill of exceptions discloses that the defendant had been a member of the city council for about fifteen years, and was a member of the police and fire committee, and well acquainted with one Walter

Oehme. Oehme had been a member of the police department of the city for a number of years, and in 1922, while in the line of duty as a policeman, was seriously injured in attempting to make an arrest, the injury increasing in seriousness as time went by. After his injury he incurred large expenses for medical treatment at home and in the Mayo Clinic at Rochester, Minnesota, and for treatment at Mt. Clemens, Michigan, and in other places. He had received bills aggregating at least $1,740.65, and other medical expenses had been incurred for which bills had not then been received. He approached Mr. Fleming and showed him these bills, and asked him to introduce an ordinance in the city council to reimburse him, as his injury was received in the line of duty. Fleming promised to do this, but suggested that he probably would not be able to secure the passage of an ordinance reimbursing Oehme for the entire amount. An ordinance was thereupon introduced in the city council, providing for the payment to Oehme of the amount of $1,740.65 to reimburse him for medical and hospital expenses. This ordinance was enacted, and in July, 1927, the amount was paid to Oehme. At the time of this payment, Fleming and his wife were in Europe, but returned about September 1, 1927. Shortly after their return, Oehme and his wife drove to the law office of the defendant, stopping at the curb. The defendant came down from his office and talked with them in regard to the passage of the ordinance and the payment to Oehme of $1,740.65 provided for therein. According to the testimony of Oehme, corroborated in large part by his wife, the following conversation ensued:

Fleming said: "You draw over $1,700.00. That is a lot of money. I done you a big favor and I thought sure you would not forget me. That is no way to do." Oehme said: "Well, I haven't any money after paying back obligations, taxes, etc., and it cost me $55.00 a week at Hemis Springs for me and my wife, and I said: 'You know you can't stay there very long with that.' 'Well,' he said, 'I done you a favor and I think you ought to get me some money.' I said: 'Well, how much do you want?' He said: 'Well, you know what that is worth. $1,700.00 is a lot of money, you know what it is worth.' I said: 'I do not know what it is worth. In fact, I didn't think you wanted any.' 'Well,' he said, 'that is no way to do.' He said: 'I didn't think you would get it before I got back. I thought sure you wouldn't forget Tom.' I said: 'Well, I didn't think you wanted any money.' I said: 'How much do you want?' 'Well,' he said, 'I will leave it to you. You ought to know what that is worth.' I said: 'I will see what I can do.' I said: 'I have got some more bills for $350.00 that came by special delivery from Mt. Clemens after you went to Europe.' I said: 'If you can introduce an ordinance to get that money for me, I will pay you out of that, whatever you want.' So he said: 'I won't do anything for you unless you get me some money. Then bring those bills around and we will talk about it, and maybe I can get that for you.' He said: 'When can you get it for me?' I said: 'I don't know, I will have to borrow it.' He said: 'Try to get it for me by the 15th.' I said: 'I will see what I can do.'"

The defendant testifies to this conversation, but denies that he asked for or was promised any money.

Oehme testified that the next day he called Fleming
on the telephone and asked him how much money he
wanted, and that Fleming said: "Get me a couple of
hundred dollars." Oehme went to his grandfather
very shortly after that and borrowed $200, receiving
a cashier's or manager's check of the Cleveland
Trust Company for that amount, dated September
27, 1927, payable to Fred A. Brewer, who is Oehme's
grandfather. This check is in evidence, and is in-
dorsed by Fred A. Brewer and by Thomas W. Flem-
ing. The check was delivered by Oehme to Fleming
at the "Colored Elks' Club" in Cleveland; Oehme
claiming that it was paid to Fleming to reimburse
him for services rendered in securing the passage of
the ordinance and the promise of Fleming to further
aid him in recovering payment through the city
council of additional indebtedness incurred by him
for medical treatment. Fleming admits receiving
the check for $200, but claims that he took only $50
of the same, and that this was for services due him
for attorney fees on other matters, and that he paid
to Oehme in cash $150, the balance of the check.
The jury may well have found from the evidence
that Oehme was not indebted to Fleming for attor-
ney fees or otherwise. The statement of Fleming
that he paid Oehme $150 out of the check has some
corroboration, to the extent that he did pay him on
that occasion some money, all of which, however,
is denied by Oehme, and it would seem somewhat
remarkable that Oehme would come clear across the
city to get the check cashed by Fleming when he
might easily have procured the money on it at the
branch bank in the western part of the city where
it was issued. The check was issued by a branch

of the Cleveland Trust Company located on West Ninety-Ninth street, and the transaction with Fleming was at the "Colored Elks' Club" in the eastern part of the city.

Thereafter another ordinance was introduced into the city council to pay Oehme the additional sum of $354 for medical bills and expenses incurred in the treatment of injuries received in the discharge of his duties. Some considerable delay ensued after the cashing of the $200 check before the introduction of the second ordinance, but that delay is satisfactorily accounted for in the evidence. Ultimately the additional amount of $354, covered by the second ordinance, was paid by the city to Oehme out of a fund held by the council. Fleming claims not to have been active in procuring these amounts from the city through the council, but the bill of exceptions contains one of his official cards, which he had transmitted to Oehme, and on the back of this card appears the following in his handwriting:

"Walter: Am sending you copy of ordinance I put in council last Monday. Meet me at City Clerk's office Friday, June 3rd, at 2:00 P. M. I will have a hearing on it at that time.

"Your friend          Thomas W. Fleming."

The defendant offered a large amount of testimony of judges and other leading citizens to establish that he enjoyed in the community where he lived a good reputation for honesty and integrity before the transactions involved in this litigation became public.

All of the evidence was fairly submitted to the jury, whose province it was to determine the issues

of fact, and we certainly cannot say that the verdict is manifestly against the weight of the evidence.

It is contended by counsel for Fleming that the bribery statute contemplates and implies influence to be exerted by the recipient of the bribe after the same is paid, and that, if money should be paid without any promise so to do, and as a gratuity after the services had been rendered, it would not be a violation of the statute. *Curtis* v. *State,* 113 Ohio St., 187. The argument on which that contention is based assumes that the second ordinance, the one for $354, had nothing to do with the transaction on which the indictment is founded, and that the two ordinances bear no relation to each other. We do not so read the evidence contained in the bill of exceptions. The jury may well have found that the $200 was paid as a bribe for services to be rendered by Fleming in securing the payment of the second claim, as well as for services rendered in securing the passage of the first ordinance. If the $200 item included payment as a bribe for influence thereafter to be exerted by the defendant, it would be a violation of the statute notwithstanding he had theretofore used his influence to secure the passage of the first ordinance. The language of the indictment charges that the payment of $200 was to influence Fleming in a matter that might legally come before him as a member of the city council, and that necessarily relates to the future.

The defendant submitted certain instructions before argument and requested that they be given. They refer to the claim that bribery concerns action in the future only. The trial judge refused to give these instructions. He was not, of course, bound to

give them in a criminal action before argument, and, in so far as they contain correct propositions of law, they are given in the general charge. In that charge the jury was instructed that bribery concerns and must apply to an act to happen in the future, and that the defendant could not be convicted of soliciting or accepting a bribe concerning the ordinance for $1,740.65, but did say to the jury that the evidence admitted relative to that ordinance was to be considered for what the jury, in its honest judgment, might deem it worth in determining whether the defendant solicited or accepted a bribe concerning some act in his official capacity as to the ordinance described in the indictment.

We find no error to the prejudice of the plaintiff in error in the general charge. Indeed, it contains a fair statement of the law applicable to the case, and no instructions were asked to be given relating to the credit to be accorded the testimony of Oehme.

We have examined all the other claimed errors, but find none to the prejudice of the plaintiff in error.

Complaint is made of the severity of the sentence, it being for two years and nine months in the penitentiary, but that is a matter resting in the sound discretion of the trial court, with which this court has nothing to do.

For the reasons given, the judgment will be affirmed.

*Judgment affirmed.*

WILLIAMS and LLOYD, JJ., concur.

Judges WILLIAMS, LLOYD and RICHARDS, of the Sixth Appellate District, sitting in place of Judges VICKERY, LEVINE and SULLIVAN of the Eighth Appellate District.